CARRIE B. WELLS *vs.* GREAT EASTERN CASUALTY CO.

APRIL 4, 1917.

PRESENT: Parkhurst, C. J., Sweetland, and Baker, JJ.

*(1)    Insurance.    Warranties.    Rescission.    Pleading.*

Where a part of the consideration of a policy of insurance was the agreements and statements contained in the application of insured, which were warranted to be true and material by the acceptance of the policy, a statement that no insurance policy issued to insured had ever been cancelled, if untrue, was a false and fraudulent representation as to a material fact, and a false warranty under the provisions of the policy, and under the plea of the general issue the insurer might show the fraudulent character of such representation and the fact that insurer, in the lifetime of insured, before the happening of the event upon which plaintiff's claim was based, had rescinded the contract of insurance.

*(2)    Insurance.    Warranties.    Rescission.    Pleading.*

During the lifetime of an insured, upon the discovery of the falsity of a material statement contained in the application, and declared to be a

warranty in the policy, the insurer is entitled to return the premiums paid and rescind the contract of insurance. Such rescission would be a defence to an action brought to recover on the contract for the death of insured occurring subsequent to the rescission, and may be shown under the general issue.

(3)  *Insurance.  Warranties.  Cancellation.*

Where the terms of an insurance policy drawn by the insurer recognize the distinction between cancellation and surrender, in requiring that an applicant state whether an insurance policy issued to him had ever been cancelled, the insurer must be held to have referred to cancellation by the insurer, and not to a policy voluntarily surrendered by insured, even though the policy so surrendered had been marked " cancelled " by the insurer.

(4)  *Insurance.  Cancellation.  Surrender.*

Where an insurer, desiring to terminate the risk, notified insured that it had cancelled the policy, and directed him to bring it in to be cancelled, which insured complied with, the transaction was one of cancellation and not a voluntary surrender, and therefore a statement subsequently made by insured. in his application to another company, that no insurance policy issued to him had ever been cancelled, was wilfully false.

(5)  *Insurance.  Warranties.*

Statements in an application for insurance, made as of the applicant's own knowledge, upon which the contract is based, are warranties.

(6)  *Insurance.  Cancellation.  Warranties.*

The right of an insurance company, which has been induced to issue a policy through the fraud of the insured, to return the consideration and rescind the contract, within a reasonable time after the discovery of the fraud and during the lifetime of the insured, is not affected by Gen. Laws, 1909, cap. 292, § 53, providing that " no misstatement made in procuring a policy of life insurance shall be deemed material or render the policy void unless the matter thus represented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether the matter so represented contributed to said contingency or event, in any case, shall be a question for the jury."

ASSUMPSIT.    Heard on exceptions of plaintiff and overruled.

SWEETLAND, J.    This is an action in assumpsit upon a contract for the renewal of a policy of accident insurance issued by the defendant to Winfield S. Wells, M. D., the

husband of the plaintiff, which action is brought by the plaintiff as the beneficiary named in said policy.

The original policy was for the term of twelve months from noon of December 7, 1911. By its terms the policy was issued in consideration of fifty dollars premium paid and the agreements and statements contained in the application of the insured, a copy of which was endorsed on the policy and made part thereof. It was further provided in said policy that the insured made and warranted the agreements and statements in said application to be true and material by the acceptance of the policy. By said policy the defendant insured Winfield S. Wells, M. D., " against the effects of bodily injuries caused directly, solely and independently of all other causes by accidental means " in accordance with a schedule of accident indemnities, contained in the policy. Therein was also a provision for the payment of $15,000 " for loss of life." In said application appears the following: " I hereby apply for a policy to be based upon the following statement of facts all of which I warrant to be true, complete and material and binding on me whether written by me or any other person." Among the statement of facts contained in the application is the following: " 12. No accident, sickness or life insurance policy issued to me has ever been cancelled or renewal refused except as follows — no exceptions." At the end of the term of said policy the defendant, in consideration of fifty dollars, issued to said Winfield S. Wells a renewal receipt continuing said policy for twelve months from noon of December 7, 1912; and at the end of said renewal period the defendant in consideration of fifty dollars again issued a renewal receipt continuing said policy for a further term of twelve months from noon of December 7, 1913. Each of said renewal receipts contained the provision that the defendant continued the policy " provided the warranties and statements in the original applica-

tion are true at this date." During the second renewal period, previous to April 20, 1914, an agent of the defendant was informed by Dr. Wells that before the defendant issued the original policy to him another accident insurance company, the Maryland Casualty Company, had cancelled an accident insurance policy which it had theretofore issued to Dr. Wells. This information was communicated to the principal office of the defendant in New York City and within a few days thereafter, on April 20, 1914, the defendant through its secretary sent to said Winfield S. Wells, M. D., by registered mail a letter, in which the defendant stated to Dr. Wells that it had learned that certain material statements contained in his application for said original policy were untrue and incomplete; and that on account of the falsity and incompleteness of said statements said policy had never been in force and effect. The defendant in said letter returned to Dr. Wells the sum of one hundred and fifty dollars in cash, the same being the full amount of the premiums paid on the policy and the two renewal receipts, and demanded that Dr. Wells return to it the sum of $32.14 which the defendant had previously paid to Dr. Wells as indemnity for certain accidental injuries, on account of which injuries the insured had made a claim under the policy. This letter was received by the plaintiff on April 23, 1914, and by her was delivered to Dr. Wells. Dr. Wells did not reply to said letter and did not return to the defendant the one hundred and fifty dollars in cash contained in said letter; nor did he pay back to the defendant said sum of $32.14 as demanded. On May 2, 1914, Dr. Wells died as a result of opium poisoning. As far as the evidence discloses it is unknown how the opium which caused his death came into the system of the insured. The plaintiff, as beneficiary under said policy, made claim against the defendant for $15,000 for the loss of the life of the insured by accidental

means. The defendant denied liability under the policy on the ground that the said policy had never been in (1) force, and that notice to that effect had been given to Dr. Wells in his lifetime and before the happening of the events which resulted in his death. The plaintiff commenced her action in assumpsit to recover the sum which she alleges is due to her in accordance with the terms of the policy. The case was tried in the Superior Court before Mr. Justice Brown sitting with a jury. At the conclusion of the testimony, on motion of the defendant, said justice directed a verdict for the defendant. The case is before us upon the plaintiff's exception to the direction of a verdict and upon certain exceptions taken by her to the rulings of said justice made in the course of the trial.

The plaintiff excepted to the ruling of said justice that if the statement of the insured contained in his application that no accident insurance policy issued to him had ever been cancelled was untrue, such untrue statement under the provisions of said policy was a false and fraudulent representation as to a material fact and a " false warranty " and that under the plea of the general issue the defendant might show the fraudulent character of such representation and the fact that therefore the defendant in the lifetime of the insured, before the happening of the event upon which the plaintiff's claim is based, had rescinded said contract of insurance. Under the practice in this State we find no error in said ruling. We shall hold later in this opinion that said justice was right in his ruling that, during the insured's lifetime, upon the discovery of the false and fraudulent (2) nature of a material statement contained in the application and declared to be a warranty in said policy, the defendant was entitled to return the premiums paid and rescind the contract of insurance. Such rescission would be a defence to this action brought to recover on the

contract for the death of the insured occurring subsequent to the rescission and might be shown under the general issue. In *Cargill* v. *Atwood,* 18 R. I. 303, this court has held, " The general issue in assumpsit puts the plaintiff upon proving his whole case, and entitles the defendant, without special notice, to give evidence of anything which shows that the plaintiff ought not to recover." *Leonard* v. *State Mutual Life Assurance Co.,* 24 R. I. 7, was an action in assumpsit on a policy of life insurance. This court held that statements in an application for life insurance made as of the applicant's own knowledge upon which the contract for insurance is based are warranties and that the defendant was entitled to show the falsity of such statements under the general issue. See, also, *Sweeney* v. *Metropolitan Life Insurance Co.,* 19 R. I. 171.

At the close of the testimony the plaintiff moved that the jury be directed to return a verdict in her favor for (3) $15,000 with interest. This motion was denied by said justice. Defendant moved that a verdict be directed in its favor. This motion was granted by said justice on the ground that the undisputed testimony established the fact that the statement above quoted, contained in said application and made a part of said policy, which the insured warranted to be true and material, was false and fraudulent and that the defendant during the lifetime of Dr. Wells had rescinded the contract of insurance contained in said policy immediately upon learning of the falsity of said statement and because of its falsity. To each of said rulings the plaintiff excepted and insists upon said exceptions before us.

The plaintiff contends that it appears by the testimony that said statement was true, that the former policy of accident insurance issued by the Maryland Casualty Company to Dr. Wells, the risk of which had been terminated prior to the issuance by the defendant of the policy

here in question, had not been cancelled by the Maryland Casualty Company, but had been voluntarily surrendered by Dr. Wells. In our opinion in considering said statement in the application a distinction is properly recognized between a policy which has been cancelled and one which has been surrendered. Among the agreements contained in the policy issued by the defendant provision is made for the cancellation of the policy by the insurer and also reference is made to the surrender of the policy by the insured. The terms of the contract, drawn by the defendant, recognize the distinction between cancellation and surrender. In requiring that an applicant state whether an accident, sickness or life insurance policy issued to him had ever been cancelled the defendant must be held to have referred to cancellation by the insurer and not to a policy voluntarily surrendered by the insured, even though the policy so surrendered had been marked " cancelled " by the insurer. An insurance company might well regard it as a fact material to be known by it in passing upon the acceptance of a risk, that insurance previously secured by the applicant had been regarded by the insurer as an undesirable risk and had been cancelled. The fact that there had been a previous voluntary surrender of an insurance policy by the insured would be of slight, if of any, importance. If the defendant regarded the previous surrender of a policy by the applicant as a fact material to be known by it, it should have specifically required information as to that as well as concerning the prior cancellation of any policy. The plaintiff cites to us the case of *Smith* v. *Ins. Co.*, 36 N. B. Rep. 300, where the distinction which we have just pointed out is recognized. The plaintiff claims that said case is an authority for her position that the testimony in the case at bar would warrant a finding that the policy issued by the Maryland Casualty Company had been voluntarily surrendered by Dr. Wells.

In *Smith* v. *Ins. Co.* .it appeared that the attorney of the insurance company after compromising a claim made against the company by the insured, without informing the insured that the company intended to cancel the policy, asked the insured if he was willing to surrender the policy on return of the unearned premium and the insured assented.   The court held that these facts warranted the finding that the insured was justified in regarding the policy as surrendered by him and not as cancelled by the company, and in so stating in a subsequent application for insurance.   The facts in the case at bar are essentially different.   It appeared that the Maryland Cas-

(4) ualty Company desired to terminate the risk, notified Dr. Wells that it had cancelled the policy, and directed him to bring to the company his policy to be cancelled.   He complied with said direction and the policy was cancelled. From these facts it clearly appears that the transaction was one of cancellation by the Maryland Casualty Company and not a voluntary surrender of the policy by the insured and that the statement in question made by the insured in his application was wilfully untrue.

(5)   The plaintiff contends that even if it should be found that said statement made by Dr. Wells was untrue, such false statement will not render the policy voidable unless the cancellation of the former policy by the Maryland Company actually contributed to the death of Dr. Wells.   She bases this contention on the provisions of Section 53, Chapter 292, General Laws, 1909, which are as follows: " No misstatement made in procuring a policy of life insurance shall be deemed material or render the policy void unless the matter thus represented shall have actually contributed to the contingency or event on which the policy is to become due and payable; and whether the matter so represented contributed to said contingency or event, in any case, shall be a question for the jury." In our opinion this statute does not apply to

the case before us. It has been the long-settled rule in this State that " statements in an application for insurance made as of the applicant's own knowledge upon which the contract is based are warranties." *Leonard v. State Mutual Life Assurance Co.,* 24 R. I. 7; *Wilson v. Hampden Co.,* 4 R. I. 159; *Lyons* v. *Providence Washington Co.,* 14 R. I. 109; *Sweeney* v. *Metropolitan Life Insurance Co.,* 19 R. I. 171. This is affirmed in *Leonard* v. *State Mutual Life Assurance Co.,* 27 R. I. 121. Unless the power to do so has been expressly or impliedly taken away by the statute quoted, in accordance with the general rule of law, an insurance company which has been induced to issue a (6) policy through the fraud of the insured may within a reasonable time after the discovery of the fraud and during the lifetime of the insured return the consideration and rescind the contract. In our opinion the insurer has not lost that right by the express terms of the statute nor by necessary implication. We do not find it to have been the intention of the General Assembly in enacting said statute that when an insurance company which has issued a life policy or a policy payable upon death arising from accidental causes, discovers during the lifetime of the insured his wilful misstatement as to a matter which has been made by the parties material to the acceptance of the risk, such insurance company must continue to treat the contract as a valid one and await the death of the insured, when for the first time it can be determined whether the matter, fraudulently misrepresented, contributed to that event. The unreasonableness of such construction would especially appear if the statute was applied to an accident insurance policy such as the one before us. Primarily it is a policy of accident insurance. In a sense it can be said to be a policy of life insurance since it provides for the payment of fifteen thousand dollars to the beneficiary in case of the death

of the insured caused by accidental means. But in its schedule of indemnities said policy provides also for the payment of fifteen thousand dollars to the insured in either of six different cases of loss or injury to certain bodily members of the insured; it also provides for payment to the insured of less sums, down to five thousand dollars, for loss or injury to other bodily members; and also provides for the payment to the insured of an indemnity of fifty dollars per week for total inability of the insured to transact business, and for the payment of an indemnity of twenty-five dollars per week, during a prescribed period, for his partial inability to transact business. The statute would be oppressive if it provided that the defendant during the lifetime of the insured, could not put an end to its extensive liability on the policy upon discovering the fraud of the insured. In *Home Life Ins. Co.* v. *Zuribowitz,* 87 Atl. 25, which case has been decided by this court since the enactment of the statute in question, we have approved of the rescission for fraud of a life insurance policy by the insurer upon learning of the wilful falsity of statements, which were made a part of said policy and constituted a warranty, before the happening of any contingency or event upon which the policy by its terms was to become due and payable.

In the view which we have taken of the case the insurance policy upon which the plaintiff bases her action had ceased to be an existing contract prior to the death of Dr. Wells; in her action on said contract the plaintiff is without standing in court; and the verdict for the defendant was properly directed.

The plaintiff's exceptions are all overruled and the case is remitted to the Superior Court for the entry of judgment on the verdict.

*Walter P. Suesman, Asa B. Suesman,* for plaintiff.

*Boss & Barnefield,* for defendant.